IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Jill L. Gibson, *on behalf of herself and all others similarly situated*, | Civil Action No. 4:17-577-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Toyota Motor Sales, U.S.A., Inc., | |
| Defendant. | |

This matter is before the Court on Defendant's motion to compel arbitration or in the alternative to dismiss the complaint. For the reasons set forth below, the Court denies the motion.

I. **Background**

Plaintiff alleges she jointly owned a 2009 Toyota Camry (the "Vehicle") with her mother, Wanda Jeffers. (Dkt. No. 1 ¶¶ 3–4.) Ms. Jeffers originally leased the Vehicle on July 31, 2008 from Florence Toyota. (Dkt. No. 21 at 2.) The lease contains a binding arbitration clause and class action waiver. (Dkt. No. 7-3.) Defendant Toyota Motor Sales, Inc. provided the Vehicle a three-year express warranty, beginning from the Vehicle's "in service" date. (Dkt. No. 7-6 at 10.) The express warranty requires owners to use a "Dispute Settlement Program" administered by the National Center for Dispute Settlement before bringing any court action regarding warranty claims. (*Id.* at 7–8.) Ms. Jeffers later purchased the Vehicle in July 2012, and Plaintiff allegedly later acquired a joint ownership interest in the Vehicle.[1] The purchase agreement with the seller,

---

[1] Defendant objects Plaintiff has not plausibly pleaded an ownership interest as of the date of the filing of this action. That is a factual dispute, but the Court observes Plaintiff has provided a copy of a title document listing her as an owner of the Vehicle before the filing of the present action. (*See* Dkt. No. 21-1.)

-1-

"VT INC TSTEE WOLT" (VT Inc. as trustee for World Omni LT), provided for an "as is" sale in which the seller disclaimed any express or implied warranties. (Dkt. No. 7-5.)

In December 2014, Toyota unilaterally extended express warranty coverage to May 31, 2017 for claims regarding dashboards degraded by prolonged exposure to sunlight, under what it called a "warranty enhancement." (Dkt. No. 14-1.). That extension is subject to the "terms, conditions, and limitations in" the original manufacturer's warranty. (*Id.*) But Plaintiff alleges the original warranty's arbitration provider, the National Center for Dispute Settlement, "does not render services associated with extended warranties provided by Defendants, including the Program." (Dkt. No. 1 ¶ 89.)

Plaintiff alleges the dashboard of the Vehicle "is sticky with holes appearing in it" yet Toyota has refused to honor the warranty extension. (*Id.* ¶¶ 41–44.) Plaintiff filed the present action on March 2, 2017, asserting claims for breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act, and "failure to make delivery" under S.C. Code §§ 36-2-711 & 36-2-712. Defendant moves to compel arbitration, or, alternatively to dismiss for lack of subject-matter jurisdiction or for failure to state a claim.[2]

## II. Legal Standard

### A. Motion to compel arbitration

The Federal Arbitration Act ("FAA") reflects a liberal policy toward arbitration. The Act provides that a written agreement to arbitrate in any contract involving interstate commerce or a

---

[2] For purposes of the motion to dismiss, the Court considers the bill of sale, the original warranty, and the warranty enhancement notice to be documents integral to the complaint, because their authenticity has not been disputed and because the complaint relies heavily on the terms and effect of those documents. Consideration of those documents does not convert the motion to dismiss to a motion for summary judgment. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

maritime transaction "shall be valid, irrevocable and enforceable" unless there exists grounds for revocation in law or equity. 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A litigant can compel arbitration under the FAA if the litigant can demonstrate: "'(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute.'" *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)). District courts have "no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500.

Whether the parties agreed to arbitrate a particular dispute is a question of state law governing contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). And where the parties did so agree, there are certainly limits on the enforceability of arbitration agreements, particularly where the dispute resolution process is "utterly lacking in the rudiments of even-handedness" or is so "one-sided that . . . [the] only possible purpose is to undermine the neutrality of the proceeding." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 935–38 (4th Cir. 1999). The party resisting arbitration bears the burden of showing that the issue is unsuitable for arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration, and "[t]his stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500; *see also* 9 U.S.C. § 3; *Hooters*, 173 F.3d at 937. The Fourth Circuit has also held that if all of the claims asserted in a complaint are

subject to arbitration, dismissal of the complaint is "an appropriate remedy." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). The Fourth Circuit has noted the inconsistency between its opinions on this issue. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) ("There may be some tension between our decision in *Hooters*—indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'—and *Choice Hotels*—sanctioning dismissal 'when all of the issues presented . . . are arbitrable.'"). It has also noted that the circuits are divided on this question, which it has not resolved for this Circuit. *Id.*

A litigant wishing to compel arbitration without answering the complaint should move under Rule 12 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a). In this Circuit, litigants seeking to should move under Rule 12(b)(3) (improper venue). *Aggarao*, 675 F.3d at 365 n.9. When considering a motion under Rule 12(b)(3), the Court may consider evidence outside the pleadings, but the facts are viewed light most favorable to the plaintiff because a plaintiff need only make a *prima facie* showing of proper venue to survive a motion to dismiss. *Id.* at 365–66.

**B. Motion to dismiss under Rule 12(b)(1)**

A motion to dismiss for lack of subject-matter jurisdiction filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of a court to adjudicate the matter before it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). A challenge to subject-matter jurisdiction may contend either 1) that the complaint fails to allege facts sufficient to establish subject matter jurisdiction or 2) "that the jurisdictional allegations of the complaint [are] not true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Where the sufficiency of the jurisdictional allegations in the complaint is challenged facially, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (2009). If, however the defendant

contends "that the jurisdictional allegations of the complaint [are] not true," the plaintiff bears the burden to prove facts establishing jurisdiction and the district court may "decide disputed issues of fact." *Id.* In that case, because the plaintiff's allegations are not presumed true, "the court should resolve the relevant factual disputes only after appropriate discovery." *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016). And where "the jurisdictional facts and the facts central to a tort claim are inextricably intertwined," so that a challenge to the truth of the jurisdictional facts indirectly challenges the plaintiff's claims on the merits, "the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Kerns*, 585 F.3 at 193.

## C. Motion to dismiss under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although

the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Discussion

#### A. Motion to dismiss for lack of subject-matter jurisdiction

Defendant asserts Plaintiff's claims are moot because Defendant offered full relief before this suit was filed. (Dkt. No. 7 at 4.) Plaintiff, however, alleges that "[d]espite repeated contacts with the Dealership seeking the dashboard replacement, Plaintiffs have yet to have their vehicle repaired." (Dkt. No. 1 ¶ 43.) Defendant's argument rests on a factual dispute unripe for adjudication before discovery. The Court therefore denies the motion to dismiss as to the mootness argument without prejudice to Defendant's ability to assert the argument after appropriate discovery.

#### B. Motion to dismiss for failure to state a claim

Defendant argues Plaintiff fails to allege a breach of the original warranty. (Dkt. No. 7 at 24–27.) That argument is irrelevant. Plaintiff alleges Defendant breached the warranty enhancement providing dashboard coverage for the Vehicle. (Dkt. No. 1 ¶ 34–44.)

Defendant further argues the warranty enhancement is not enforceable because Toyota received no consideration for the extension. (Dkt. No. 7 at 27–29.) But under South Carolina's adoption of the Uniform Commercial Code, "An agreement modifying a contract [for goods subject to the U.C.C.] needs no consideration to be binding." S.C. Code § 36-2-209; *Gold Kist, Inc. v. Citizens & S. Nat. Bank of S.C.*, 333 S.E.2d 67, 71 (S.C. Ct. App. 1985) ("Of course we recognize that Section 36–2–209 of the South Carolina Code of Laws of 1976[1] indicates that a

disclaimer made after the closing of the sale can be made a binding part of the contract if the parties agree to the modification."). The original warranty (the terms of which are expressly adopted by the warranty extension) would appear to be an existing agreement modified by the warranty extension. The warranty enhancement certainly purports to modify the existing warranty agreement. (*See* Dkt. No. 14-1 ("Toyota would like to advise you an enhancement to portions of your Toyota New Vehicle Limited Warranty. This program will extend the warranty coverage for repairs related to cracked and/or sticky/melting Dashboards . . . .").) Defendant, however, argues it does not because the original warranty had expired before Toyota extended it. That argument is unpersuasive because it lacks any support from the statutory text or cases interpreting the statute. The cases Defendant relies upon are clearly inapposite. In *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363 (D. Mass. 1991), the court found a helicopter's warranty had *not* been extended. *Hart Engineering Co. v. FMC Corp.*, 593 F. Supp. 1471 (D.R.I. 1984), does not concern U.C.C. § 2-209 at all.

Finally, Defendant argues that Plaintiff has not alleged a breach of the warranty enhancement. According to Defendant, Plaintiff must allege an anticipatory breach of the warranty because the extended warranty coverage lasts until July 31, 2018. That argument is without merit. Plaintiff alleges Defendant has actually breached the warranty enhancement, not that she anticipates Defendant will breach the warranty enhancement in the future. (*See* Dkt. No. 1 ¶ 39 (alleging Defendant knew it would not have "in the foreseeable future" sufficient parts to implement the warranty enhancement), ¶ 42 (alleging Plaintiff has waited over two years for repair).)

### C.     Motion to compel arbitration

As a threshold matter, the lease's arbitration agreement obviously does not bind persons (including the original lessee) who purchased the Vehicle after the expiration of the lease. The

arbitration clause relevant to the present case is the arbitration agreement found in the manufacturer's express warranty, which covers a period beginning "on the vehicle's in-service date, which is the first date the vehicle is either delivered to an ultimate purchaser, leased, or used as a company car or demonstrator" and which "is automatically transferred at no cost to subsequent vehicle owners." (Dkt. No. 7-6 at 10.) Defendant asserts, "[b]ut for the Lease, there would have been no warranty relationship between Plaintiff Jeffers and Toyota. Thus, Plaintiff Jeffers' claims fall within the broad scope of the [lease's] arbitration clause." (Dkt. No. 17 at 16–17.) But by the unambiguous language of the express warranty, Ms. Jeffers's purchase created a warranty relationship between Ms. Jeffers and Toyota regardless of whether she or someone else had leased the Vehicle before she purchased it. (Dkt. No. 7-6 at 10 ("Warranty coverage is automatically transferred at no cost to subsequent vehicle owners.").) Defendant's argument that an arbitration agreement found in a vehicle lease agreement should be enforced against anyone who purchases the used vehicle after the expiration of the lease is without merit.

Defendant argues that after the expiration of the lease, the bill of sale disclaimed any warranties and sold the Vehicle "as is." But the warranty disclaimer in the bill of sale disclaims warranties from the seller, VF Inc. as trustee for World Omni LT, not the manufacturer. (*See* Dkt. No. 7-5.) The Vehicle was sold "as is." "As is," of course, includes any remaining manufacturer's warranty period or possible future warranty enhancements—otherwise, the Vehicle would be modified by the sales agreement, not sold "as is." Any remaining manufacturer warranties, or possible future warranty enhancements, were part of the bargain for the purchase of the Vehicle.

Plaintiff therefore has adequately alleged that the Vehicle had an express warranty from Defendant, that she had an ownership interest in the Vehicle at a time when it was covered by the express warranty, and that Defendant breached the warranty. Since the warranty enhancement

incorporated the terms and conditions of the original warranty, one of which was an arbitration agreement, the Court proceeds to consider whether that arbitration agreement precludes the present suit.

The arbitration agreement in the warranty does not provide for binding arbitration instead of litigation. Rather, it provides, "You must use the Dispute Settlement Program (or, in California, the CDSP) *before* seeking remedies through a court action pursuant to the Magnuson-Moss Warranty Act." (Dkt. No. 7-6 at 8 (emphasis added).) That language comports with FTC regulations interpreting the Magnuson-Moss Warranty Act to prohibit the enforcement of binding arbitration clauses as the exclusive means of dispute resolution for written warranties for consumer products. *See* 16 C.F.R. § 703.1 *et seq.*[3] Plaintiff does not allege she used the Dispute Settlement Program before filing the present action.

Plaintiff, however, alleges that, regarding the warranty enhancement, it is impossible to attempt to use the Dispute Settlement Program before resorting to litigation because the entity Defendant selected to administer that program does not provide arbitration services for the warranty enhancement. (Dkt. No. 1 ¶ 89.) In other words, Defendant allegedly breached the arbitration agreement (and so waived its enforcement), or, alternatively, imposed an impossible condition precedent by selecting an unavailable arbitration administrator. *See Jones v. United States*, 96 U.S. 24, 29 (1877) ("Impossible conditions cannot be performed; and if a person contracts to do what at the time is absolutely impossible, the contract will not bind him, because no man can be obliged to perform an impossibility."). Accepting the complaint's well-pleaded

---

[3] Whether Courts should defer to the FTC's opinion that the Magnuson-Moss Warranty Act prohibits pre-dispute binding arbitration of written warranty claims is a disputed question, which the Fourth Circuit has yet to decide, but it is not an issue presented in this case. *See Krusch v. TAMKO Bldg. Prod., Inc.*, 34 F. Supp. 3d 584, 590 (M.D.N.C. 2014) (providing extensive discussion of the issue).

allegations as true, the arbitration agreement in the original warranty is not enforceable with regard to the warranty enhancement.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** the motion to compel arbitration or to dismiss.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

September 26, 2017
Charleston, South Carolina